IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SHAWN JAMES MILLER,<br><br>Petitioner<br><br>v.<br><br>SHERIFF JESSE SLAUGHTER,[1]<br><br>Respondent. | Cause No. CV 25-36-GF-DWM<br><br><br>ORDER |

Federal pro se prisoner Shawn James Miller ("Miller") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) While Miller signed the document, it was prepared by Terra M. Ward. (*Id.* at 8.) Miller generally challenges the disciplinary proceedings that occurred in January of this year while he was at the Great Falls Pre-release Center ("GFPRC"). (*Id.* at 2, 6-7.) Miller alleges during the proceedings there was a lack of evidence and documentation, that his written statement was altered when it was typed by staff, that procedures

---

[1] Miller named Hon. Dana L. Christensen as the Respondent in this matter. (Doc. 1 at 1.) In a habeas petition, however, the respondent must be the warden of the facility where the petitioner is held. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004). Miller is presently incarcerated at the Cascade County Detention Center. Accordingly, the Court has substituted Cascade County Sheriff Jesse Slaughter as the proper respondent.

1

were not followed, that his caseworker retaliated against him, and that he received a disproportionate punishment. (*Id.* at 6-7.)

The Court is required to screen all actions brought by prisoners who seek relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2).

## BACKGROUND

Attached to Miller's petition are various medical records. (Doc. 1-1 at 1-14.) It is unclear how these documents relate to his present claims. Miller also attaches several pages of the appeal he filed from his disciplinary proceedings. (*Id.* at 15-17.) In his request for administrative remedy, Miller asserts that there was a lack of documentation and evidence to support the decision that he had committed a violation while at the GFPRC. (*Id.* at 17.) Specifically, Miller acknowledges answering a phone call from a co-worker, Gabe, who was incarcerated at the Cascade County Jail. During the call Gabe requested Miller tell Gabe's girlfriend to clean out his storage unit; Miller denies being told about firearms or directing Gabe's girlfriend to remove any guns from the storage unit. (*Id.*) Miller states he was not involved in the incident until 12 hours after Gabe's arrest and by that time that law enforcement officers would have already seized the guns.

This Court observes that in a companion 28 U.S.C. § 2255 matter, Miller provided additional documentation related to his disciplinary proceedings. *See, USA v. Miller*, Cause No. CR 20-24-BU-DLC, Ex. (Doc. 152-1.) The Undersigned takes judicial notice of those documents. *See Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011)(court may take judicial notice of proceedings in other courts, within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue). Those exhibits are summarized as follows:

> On January 8, 2025, Miller was notified of the rules and regulations related to his proceedings before the Discipline Committee prior to disposition of the alleged violation of the GFPRC's rules. (Doc. 152-1 at 1.) A phone audit was performed of Miller's cell phone. During the audit, text messages were discovered between Miller and another, presumed to be Gabe. According to the 1/6/25 Incident Report, "The context of messages contained language involving the location and moving of firearms and the acquisition of berries. During my investigation, berries was later identified as a common street term for fentanyl pills. Resident Miller and this unknown contact were discussing firearms contained in a storage unit and were discussing about moving them before local law enforcement seized them." (*Id.* at 4.) The Report concluded that Miller attempted to impede an ongoing investigation by having communication about the location and movement of firearms and also attempted to acquire "berries." (*Id.*)

> On January 7, 2025, Miller was notified of the charges/violations when he was provided a copy of the Incident Report. (*Id.* at 6.) On January 10, 2025, a hearing was held. Miller provided a written statement and also admitted to asking about pills and talking about guns. (*Id.*) A copy of the text message thread between Miller and Gabe was admitted. Following the hearing, the Discipline Hearing Officer ("DHO") concluded that Miller engaged in prohibited acts by engaging in Disruptive Conduct and Use of the Telephone for Illegal Purposes. (*Id.* at 7.) As a sanction, Miller's 41 days good

3

conduct time was disallowed. (*Id.*) On February 13, 2025, Miller was provided with appeal instructions. (*Id.* at 5.)

## ANALYSIS

As explained below, the petition will be dismissed. It is unexhausted and Miller fails to state a claim for relief.

### Jurisdiction

A writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A federal petitioner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, while a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See e.g., Brown v. United States*, 610 F. 2d 672, 677 (9th Cir. 1990). To receive relief under § 2241, a petitioner must show that his sentence is being executed in an illegal, but not necessarily unconstitutional manner. *Brown*, 610 F. 2d at 677. In this case, Miller challenges the execution of his sentence. Accordingly, this Court has jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

### Venue

A petitioner filing for a writ of habeas corpus under § 2241 must file the petition in the judicial district of the petitioner's custodian. *Brown*, 610 F. 2d at 677. Miller is in the custody of the Cascade County Detention Center, which is

4

located within this Court's jurisdiction. 28 U.S.C. § 2254(a); § 2241(d). Venue is proper in this Court.

**Exhaustion**

Before filing a petition for writ of habeas corpus under 28 U.S.C. § 2241, a federal prisoner must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F. 2d 570, 571. The exhaustion requirement is not a statutory requirement, rather it was judicially created. Thus, it is not jurisdictional. *See e.g., Brown v. Rison*, 895 F. 2d 533, 535 (9th Cir. 1990). If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." *Id.*

While it appears that Miller attempted to exhaust his administrative remedies, *see* (Doc. 1-1 at 15-17), he does not provide the outcome of these attempts. He indicates that the administrative appeal was untimely because it was initially sent to the wrong regional office. (*Id.* at 16.) It is also indicated that "other appeals have been filed," (*id.*), although the nature of these appeals is not apparent from Miller's petition or his attached exhibits. *See also*, (Doc. 1 at 3.) Accordingly, it does not appear that Miller has properly exhausted his administrative remedies.

//

5

**Review of Petition**

As a preliminary matter, Miller does not identify a constitutional provision or federal law that he believes has been violated in this matter. Given his reference to his disciplinary hearing proceedings, the Court presumes he is intending to assert a due process violation.

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objective of the institutional environment. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. *Id.* at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs' of a prison. *Superintendent, Mass. Corr. Inst. V. Hill*, 472 U.S. 445, 4540455 (1984).

In the context of disciplinary proceedings, due process requires that the prisoner receive the following procedural guarantees: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67. Miller does not establish that he was denied any of these procedural due process guarantees.

Miller claims that there was a lack of evidence and documentation presented at the disciplinary hearing, that the only evidence against him was that he "answered a call." (Doc. 1 at 6.) But a review of Miller's documents belies this assertion. Miller gave a statement, the reporting officer performed an investigation and provided an Incident Report, and a copy of the text message thread between Miller and Gabe was introduced at the hearing. (Doc. 152-1 at 6-7.) Thus, Miller's assertion that the only evidence of his violation of the GFPRC's rules was that he "answered a phone call" is inaccurate.

Similarly, in addition to his written statement, it was noted that Miller admitted to asking about the pills and talking about guns. (*Id.* at 6.) Additionally, Miller made comments regarding the incident that resulted in a finding that he committed the prohibited act. (*Id.* at 2.) In relation to the pills, Miller acknowledged that he asked how much they were going for, but stated he was "just wondering." Miller implies that he would have no intent on obtaining or using "berries," because he was on Suboxone at the time. (*Id.*)

Additionally, in relation to the guns, Miller acknowledged that while the write-up "looked terrible," he never intended to personally go to Gabe's storage unit. He was simply trying to help out another as he knows what it is like to "be in jail and lose all my stuff." (*Id.*) It is unclear exactly how Miller believes his words were misrepresented. While the Disciplinary Committee heard and considered his

7

explanations, they apparently did not find that he was absolved of any wrongdoing. Moreover, Miller was timely provided appeal instructions. (*Id.* at 5.) Thus, the documentation provided by Miller does not show that his written statement was altered or that he was not given proper appeal information. Miller has not demonstrated a due process violation occurred.

Miller then contends that he was retaliated against by a caseworker that treated him poorly during his time at GFPRC and that the punishment he received was disproportionate given how well he had been doing. But neither of these issues present a cognizable due process claim. The fact that Miller did not get along with a caseworker or that he disagrees with the sanction he received does not implicate a corresponding constitutional violation. In short, Miller has failed to demonstrate that his due process rights were violated. *Wolff*, 418 U.S. at 564. The petition will be dismissed.

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. Miller has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28

U.S.C. § 2253(c)(2). The petition is unexhausted, and Miller has not established a due process violation. Accordingly, a certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

**ORDER**

1. Miller's § 2255 Motion (Doc. 1) is DISMISSED.

2. The Clerk of Court is directed to enter a judgment of dismissal.

3. The Clerk of Court is directed to amend the docket to name Sheriff Jesse Slaughter as the proper Respondent.

4. A certificate of appealability is DENIED.

DATED this 22nd day of May, 2025.

_____
Donald W. Molloy, District Judge
United States District Court